IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOHN GARRETT SMITH,

        Plaintiff,

v.

SANDRA ALDRIDGE,

        Defendant.

No. 3:17-cv-01485-HZ

OPINION & ORDER

John Garrett Smith
Stafford Creek Corrections Center
191 Constantine Way
Aberdeen, WA 98520

    Pro Se Plaintiff

Daniel G. Lloyd
CITY OF VANCOUVER
Assistant City Attorney
PO Box 1995
Vancouver, WA 98668

    Attorney for Defendant

HERNÁNDEZ, District Judge:

Pro se Plaintiff John Garrett Smith, an inmate at Stafford Creek Corrections Center in Washington, filed this action against Defendant Sandra Aldridge claiming violations of the Racketeer Influenced and Corrupt Organizations Act, the Americans with Disabilities Act, and the Computer Fraud and Abuse Act. Defendant moves to dismiss this case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the Motion to Dismiss.

## BACKGROUND

After a bench trial in Washington state court, Plaintiff was convicted of second-degree attempted murder and second-degree assault for physically beating and strangling his wife. Def. Mot. Dismiss 3, ECF 10.[1] The assault was inadvertently recorded by Plaintiff in a voicemail left on his cell phone. *Id.* at 3–4. After Plaintiff fled from the scene, Plaintiff's stepdaughter came into possession of the cell phone and noticed that there was a missed call and voicemail from the family landline left around the time of the assault. *Id.* at 4. Upon listening to the voicemail, Plaintiff's stepdaughter gave the phone to a police officer who then seized the phone and executed a search warrant on it. *Id*. At trial, Plaintiff moved to suppress the recording, but the trial court denied his motion. *Id.*

Plaintiff filed his present complaint on September 19, 2017, against Defendant, a Vancouver City Police detective involved in Plaintiff's criminal case. Compl., ECF 1; Def. Mot. Dismiss 2. In his complaint, Plaintiff requests "relief from extraordinary damages caused by hostile and severe criminal acts committed 'under color of law' by the Defendant." Compl. at 1.

---

[1] The facts cited in Defendant's Motion to Dismiss come from the Washington Supreme Court's opinion in *State v. Smith*, 189 Wash.2d 655, 405 P.3d 997 (2017). Plaintiff's appeal focused on the motion to suppress the recording of the incident. *Id.* at 660. Plaintiff argued that the recording was unlawfully intercepted under Washington law and, therefore, was inadmissible at trial. *Id.*

The Complaint broadly asserts that the Defendant illegally and falsely imprisoned Plaintiff for "fabricated" and "staged" reasons. Compl. at 1. Plaintiff also asserts that he incurred "extraordinary financial losses . . . due to the theft and/or stultification of the Plaintiff's valuable, proprietary Intellectual Properties applied in his Professional Engineering Career" as well as his "entire estate and physical assets." Compl. at 1–2. The Complaint also appears to contain references to various federal statutory causes of action: the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Americans with Disability Act ("ADA"), and the Computer Fraud and Abuse Act ("CFAA").[2]

With regard to Plaintiff's RICO claim, Plaintiff alleges that the Defendant "stole the Plaintiff's smartphone," illegally invaded the smartphone with "maliciously fraudulent Probable Cause" and "a deceptive warrant obtained by guile." Compl. ¶¶ 1–2. He alleges Defendant then concealed these bad acts by perjuring herself as to the "illegal disposal/destruction of the iPhone." Compl. ¶ 3. Plaintiff goes on to assert that the Defendant created fake evidence in the form of an audio recording extracted from the phone "to obtain illegal conviction for a pre-fabricated crime that did NOT happen." Compl. ¶ 4 (emphasis in original). He also alleges that Defendant lied about her qualifications and certifications in order to create the audio recording of a manufactured "'voice mail' inadvertently left by the Plaintiff . . . in order to frame an innocent Autistic man." Compl. ¶ 5. Finally, he claims "[m]alicious diversionary manipulation of the Autistic Plaintiff by proffering false medical claims that are totally refuted by all legitimate professional medical records, and phone logs that clearly affirm claims (1), (2), (3), (4), (5), all violative of 18 U.S.C.S. § 1961–1965 – RICO." Compl. ¶ 6.

---

[2] To the extent that Plaintiff clarified the claims brought in his complaint in his December 6, 2017, "Motion to Proceed on Original and Standing Grounds of 18 U.S.C. 1030 Torts," ECF 8, the Court has taken the motion into consideration in this decision.

As to Plaintiff's ADA claim, he appears to allege that the Defendant violated the ADA by disparaging Plaintiff and fabricating hysteria in "coercion" with local media "to propagate her lies . . . and conceal her own irrefutable and uncontested sinister pattern of RICO-sadism" and hate crimes. Compl. ¶ 7. He specifically alleges that she ganged up on, manipulated, and made sport of the Plaintiff in violation of 42 U.S.C. 12101 as well as ADA and WHO standards of decency. Compl. ¶ 7.

Finally, Plaintiff appears to allege that Defendant violated the CFAA. Specifically, Defendant alleges that she "literally stole the Plaintiff's smart phone." Compl. ¶ 1; *see also* Pl. Mot. Proceed. Orig. Standing Grounds ("Pl. Mot."), ECF 8 ("The 9.14.17 suit is a tort claim against 18 U.S.C. 1030 crimes."). As evidence of this, Plaintiff allges that Defendant "logged it into police evidence 38 minutes PRIOR to the time of the fake, staged D.V. incident per VPD's own UPC-encoded records." Compl. ¶ 1.

Ultimately, Plaintiff asserts that his state proceeding was a "manufactured criminal case" that "does not legally exist for want of jurisdiction (for lack of mandatory judge signature to her bogus probable cause affidavit, thereby rendering her fraudulent scam 'case' VOID AB INITIO)." Compl. ¶ 9. The specific relief Plaintiff requests includes (1) a lifetime no-contact order against the Defendant, (2) financial restitution in the amount of $49,700,700.00, and (3) imprisonment of Defendant. Compl. at 6.

This is one of many cases Plaintiff has brought against various individuals and entities involved in the criminal prosecution of Plaintiff. As discussed in the Court's November 20, 2017 Order, the six prior claims asserted by Plaintiff have been dismissed for failure to state a claim, frivolity, and maliciousness. Order 2–3, ECF 6.

///

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In other words, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

However, the court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (internal quotation marks, citation, and alterations omitted). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

As the Ninth Circuit has instructed, however, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A *pro se* complaint "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). A *pro se* litigant will be given leave to amend his or her complaint unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000).

## DISCUSSION

Defendant contends that Plaintiff's claims should be dismissed with prejudice on the grounds that Plaintiff (1) improperly challenges his conviction through non-habeas proceedings and (2) fails to state a claim upon which relief can be granted.[3] As to both arguments, this Court agrees. However, because Plaintiff proceeds *pro se* in this action, he will be given an opportunity to amend his complaint to cure the deficiencies identified below.

### I.     *Heck* Bar to Plaintiff's Claims

Defendant argues that "to the extent any allegations suggest Plaintiff's conviction is invalid, the Court must disregard them." Def. Mot. 8. The Supreme Court has held that the exclusive remedy for a prisoner seeking relief from his or her confinement is habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from imprisonment, his sole federal remedy is a writ of habeas corpus."). The Court has further indicated, in the context of § 1983 actions, that

---

[3] The Court also finds that to the extent that Plaintiff is seeking criminal penalties, Compl. at 6, or enforcement of a criminal statute, he is unable to do so as a private citizen. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Tia v. Criminal Investigation Demanded as Set Forth*, 441 Fed.Appx. 457, 458 (9th Cir. June 30, 2011) (denying a state prisoner's request for a criminal investigation into a criminal RICO conspiracy because the prisoner "lacks standing to compel an investigation or prosecution of another person.").

claims for damages are barred when "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction":

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 481–82, 486–87 (1994). In such a case, "the claimant *can* be said to be 'attacking . . . the fact or length of confinement.'" *Id.* at 482; *see also Whitaker v. Carcetti*, 486 F.3d 572, 583–84 (9th Cir. 2007) (finding that § 1983 actions that seek to demonstrate the unlawfulness of a search or seizure uncovering evidence on which a conviction is based are barred by the principles underlying *Heck* until the conviction has been overturned or the charges dismissed).

The principles underlying the *Heck* bar and the exclusivity of habeas remedies are based in federalism. The exhaustion requirement in habeas corpus actions "is rooted in considerations of federal-state comity" and proper respect for state judicial and administrative functions. *Preiser*, 411 U.S. at 491. And the limitations on § 1983 claims established in *Heck* were intended to preserve "finality and consistency" and prevent "a collateral attack on [a] conviction through the vehicle of a civil suit." *See Heck*, 512 U.S. at 484–85 (finding "the principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal

judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecutions.").

The extent to which this rule extends to non-1983 claims is unclear. In the Ninth Circuit, these principles have been extended to claims under *Bivens*—the federal-actor counterpart to § 1983—and the Federal Torts Claim Act. *See Housley v. United States*, 156 F.3d 1237, 1237 (9th Cir. July 28, 1998) (unpublished) (affirming the district court's dismissal of *Bivens* and FTCA claims where the plaintiff "ha[d] not alleged any injuries other than injuries which arose from his underlying narcotics conviction"). And at least one district court from this circuit has applied the *Heck* bar to civil RICO claims where success in his civil claim would "necessarily invalidate his conviction." *Garcia v. Scribner*, No. C. 97-0742 CRB, 1998 WL 397895, at *2–3 (N.D. Cal. July 10, 1998) ("The *Heck* principle applies with equal force to civil RICO claims.") (citing *Stephenson v.* Reno, 28 F.3d 26 (5th Cir 1994)). *But see Hunter v. Gates*, No. CV99-12811, 2001 WL 837697, at *3 (C.D. Cal. April 16, 2001) (declining to extend the *Heck* rule to RICO claims that "collaterally attacks a criminal judgment"). Courts in other circuits have done so as well. *See Harrison v. Grand Jurors*, No. 3:05CV348/MCR/MD, 2006 WL 354218 at *2 (N.D. Fla. Feb. 13, 2006) (collecting cases from the Fifth Circuit, the Sixth Circuit, the District Court of the District of Columbia, the Northern District of Illinois, and the Northern District of New York).

In the present case, it is unclear whether the complaint challenges Plaintiff's underlying conviction. On one hand, Plaintiff does not clearly request his release from prison in his prayer for relief nor does he allege any specific constitutional violations under § 1983. Compl. 6; Pl. Mot. 1. Instead, Plaintiff brings CFAA, RICO, and ADA claims for damages. On the other hand,

most of Defendant's alleged bad acts relate to Plaintiff's criminal trial and the evidence admitted at trial, suggesting that these civil claims are intertwined with the lawfulness of his state conviction. Plaintiff's complaint admits as much: "The Defendant purposefully and maliciously committed the following crimes resulting in the illegal, false imprisonment of the Plaintiff for reasons that all authentic evidence proves were fabricated and staged through the legerdemain of Defendant." Compl. 1.

With that in mind, the Court finds that, to the extent that Plaintiff's civil claims rely on acts that were central to Plaintiff's criminal conviction, a finding in favor of the Plaintiff would necessarily imply that Plaintiff's conviction is invalid. For example, in his ADA and RICO Act allegations, Plaintiff asserts that Defendant manufactured evidence and perjured herself in order to obtain a conviction and "frame an innocent autistic man." Compl. ¶¶ 3–7. Were Plaintiff to demonstrate that this was true in proving his civil claims, it would shed doubt on the validity of Plaintiff's conviction. *See Ng v. Miki*, 98 Fed.Appx. 651, 651–52 (9th Cir. 2004) (affirming the district court's decision that the plaintiff's § 1983 claims were barred by *Heck* where the plaintiff alleged that the officer who issued his traffic ticket fabricated the charges and perjured himself at the plaintiff's criminal trial). Similarly, to the extent that Plaintiff establishes that his cell phone was obtained and accessed by an unlawful warrant in his proving his CFAA claim, it would also cast a shadow over Plaintiff's conviction. Compl. ¶¶ 1–2. Not only did the fruits of that search include the voicemail that was used as evidence at Plaintiff's criminal trial, but the admissibility of the evidence obtained from the search of his phone was also the subject of a pretrial motion to suppress. *See Whitaker v. Garcetti*, 486 F.3d 572, 583–84 (9th Cir. 2007) (In finding that the plaintiffs were barred from bringing claims that the defendants "committed judicial deception to obtain wiretap warrants" and hid evidence produced by those wiretaps, the Ninth Circuit

reaffirmed its holding that *Heck* bars § 1983 actions "alleging illegal search and seizure of evidence upon which criminal charges are based."). Thus, the logic underlying the cases discussed above applies with equal force to the Plaintiff's claims, and to the extent that they rely on acts by Defendant that were central to Plaintiff's conviction, these claims are dismissed as barred by *Heck*.

## II. Failure to State a Claim for Relief

Defendant also argues that Plaintiff has failed to state a claim for relief. Specifically, she argues that Plaintiff has failed to allege sufficient facts to state a RICO claim, is prohibited from bringing a claim for individual liability under the ADA, and has failed to state a claim under the CFAA because Defendant had a warrant when she accessed his phone. This Court agrees.

### A. Racketeer Influenced and Corrupt Organizations Act

Defendant argues that Plaintiff has failed to allege all the elements required to state a claim under RICO. Def. Mot. 9–10. In order to state a civil claim for relief under RICO, a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rezner v. Bayerische Hypo–Und Vereinsbank*, 630 F.3d 866, 873 (9th Cir.2010) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The plaintiff must also show that "the racketeering activity was both a but-for cause and proximate cause of his injury" *Id.* (citing *Holmes v. SEC Investor Prot. Corp.*, 503 US 258, 268 (1992)).

Here, Plaintiff has not sufficiently alleged the elements of a civil RICO claim. More specifically, Plaintiff fails to adequately allege that Defendant participated in a pattern of racketeering activity. Racketeering activity is defined in § 1961 of the statute, which provides a list of acts chargeable or indictable under state and federal law. 18 U.S.C. § 1961(1). The acts

chargeable under state law are limited to "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . punishable by imprisonment for more than one year." *Id.* The indictable federal acts are wide-ranging and include, for purposes of this opinion, obstruction of justice under 18 U.S.C. §§ 1503 and 1512. The statute also requires that the defendant has committed at least two acts of racketeering activity for the activity to constitute a pattern. 18 U.S.C. § 1961(5).

Plaintiff claims that Defendant violated RICO by accessing Plaintiff's smartphone with a deceptive warrant, covering up her theft with perjured testimony, and manufacturing and proffering false evidence to wrongfully convict Plaintiff. Compl. ¶¶ 1–6. Plaintiff's allegations of perjury may amount to "obstruction of justice" under § 1503 and, thus, qualify as "racketeering activity." *See Streck v. Peters*, 855 F. Supp. 1156, 1162 (D. Haw. 1994) (noting that "acts of perjury may, under the appropriate circumstances, constitute RICO predicate acts" as obstruction of justice under 18 U.S.C. § 1503). However, the alleged perjury all took place in the context of a state criminal proceeding, and 18 U.S.C. § 1503—the appropriate federal statute—only applies to obstruction of justice in *federal* court proceedings. *Slade v. Gates*, No. 01-8244-RMT, 2002 WL 31357043, at *6 (C.D. Cal. Oct. 2, 2002) (citing *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 708 (2nd Cir.1990) ("[I]n defining 'racketeering activity,' Congress not only included obstruction of justice by reference to a specific section, § 1503, of Title 18 of the United States Code, which is expressly limited to federal court proceedings, but it also failed to include obstruction of justice as one of the generic state law crimes under § 1961(1)(A).")). Similarly, any alleged destruction, alteration, or concealment of evidence punishable under § 1512 must have occurred in connection with a federal proceeding. *See* 18 U.S.C. 1515(a)(1)

(noting that official proceeding as used § 1512 includes proceedings in federal courts, before Congress, or before a federal agency.). Thus, even reading Plaintiff's complaint liberally he has failed to state a claim for relief under the federal civil RICO statute. 18 U.S.C. § 1961–65.

### B. Americans with Disabilities Act

Defendant argues that Plaintiff's ADA claim fails because "the Ninth Circuit does not allow a plaintiff to sue an individual for any alleged ADA violation." Def. Mot. 10. Defendant is correct. The Ninth Circuit has held that "[b]ecause Title I of the ADA adopts a definition of 'employer' and a remedial scheme that is identical to Title VII, *Miller's* bar on suits against individual defendants also applies to suits brought under Title I of the ADA." *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (affirming the district court's holding that "individual defendants cannot be held personally liable for violations of the ADA"). Claims under Title II of the ADA—which applies to state and local governments—similarly cannot be brought against individual state actors. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that in the § 1983 context individual state actors cannot be held individually liable under Title II of the ADA). Plaintiff alleges that Defendant—an individual—violated the ADA by committing "hate crimes against Autism." Compl. ¶ 7. Because such a claim is barred under the ADA, Plaintiff cannot bring this cause of action against Defendant.

### C. Computer Fraud and Abuse Act

Defendant contends that Plaintiff's CFAA claim fails because Plaintiff admits that Defendant accessed his phone with authorization and the last subsection of the Act—which does not require the absence of authorization—is inapplicable here. Def. Mot. 11. The CFAA requires "a private plaintiff [to] prove that the defendant violated one of the provisions of § 1030(a)(1)–(7), and that the violation involved one of the factors listed in [§ 1030(c)(4)(A)(i)]." *LVRC*

*Holdings LLC v. Brekka*, 581 F.3d 1127, 1130–32 (9th Cir. 2009). Sections 1030(a)(1)–(6) all require the plaintiff to show that the defendant accessed the plaintiff's computer without authorization or in excess of the defendant's authorized access. 18 U.S.C. § 1030(a)(1)–(6). The last subsection of § 1030(a) requires the plaintiff to show that the defendant, with the intent to extort something of value, "transmit[ted] in interstate or foreign commerce any communication" threatening to damage or obtain information from a protected computer or "demand[ing] or request[ing] money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion." *Id.* at § 1030(a)(7). Finally, the CFAA provides that it "does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of . . . a State, or political subdivision of a state." *Id.* at § 1030(f).

The Court agrees with Defendant that Plaintiff has failed to state a claim for relief under the CFAA. Plaintiff alleges that Defendant stole his smartphone, which is legally protected under CFAA. Compl. ¶ 1. However, Plaintiff also admits that Defendant had a warrant when she accessed his phone. Compl. ¶ 2. Defendant, therefore, had legal authority to access Plaintiff's phone at the time that she did.[4] Even if Plaintiff's allegation is true that Defendant misused information from the phone, Compl. ¶ 2, the CFAA does not prohibit the misuse or misappropriation of information otherwise accessed with authorization, *U.S. v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) ("[T]he plain language of the CFAA targets the unauthorized procurement or alteration of information, not its misuse or misappropriation." (internal citations and alterations omitted)). And while Plaintiff does allege that Defendant destroyed

---

[4] Because Plaintiff admits that Defendant had a warrant, Plaintiff would have to show that the warrant was invalid in order to show that the access was unauthorized. Thus, as discussed earlier in this Opinion, to prevail on this CFAA claim, the Court would have to determine that Plaintiff's Fourth Amendment Rights were violated. Such a finding would be inconsistent with the principles announced in *Heck*. *See supra* Section I.

13- OPINION & ORDER

information—specifically GPS-tracking evidence—from his phone, a finding in Plaintiff's favor on this point may implicate the validity of his conviction. This evidence goes to Plaintiff's general contention that the act for which he was convicted was staged and that Defendant covered up evidence that would prove this point. Accordingly, Plaintiff cannot state a claim for relief under the CFAA at this time.

## III. Leave to Amend

Generally, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is particularly true with regard to *pro se* plaintiffs: "Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (citations and quotation marks omitted); *cf. Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend is properly denied "if amendment would be futile"). Allegations of *pro se* plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 92 S.Ct. 594, 596 (1972) (citation omitted). Here, it appears that Plaintiff is using his civil claims to challenge his underlying conviction, which Plaintiff cannot do under the principles set forth in *Heck*. Plaintiff has also failed to plead the elements of the above causes of action sufficiently to state a claim upon which relief may be granted. However, Plaintiff should be given the opportunity to amend his complaint to cure the deficiencies identified above and state his claims without challenging his underlying conviction. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (Ordinarily the court should give the defendant "an opportunity to state, if he can, injury apart from that resulting from his conviction and sentence.").

///

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss [10] and dismisses the complaint without prejudice. Plaintiff is given leave to amend his complaint within thirty days of this order curing the deficiencies identified above. Because Plaintiff's pending motions are premised on allegations in his current complaint challenging his underlying conviction, all pending motions are denied as moot.

IT IS SO ORDERED.

Dated this \_\_\_22\_\_\_ day of March, 2018.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge